UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:07CV-15-R

DENISE STORY                                                                                               PLAINTIFF

v.

INTERNATIONAL SPECIALTIES PRODUCTS                                           DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Summary Judgment (Docket #30). Plaintiff has filed a response (Docket #41) to which Defendant has replied (Docket #44). Plaintiff has also filed a Motion for Partial Summary Judgment (Docket #35). Defendant has filed a response (Docket #42) to which Plaintiff has replied (Docket #45). These matters are now ripe for adjudication. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.

**BACKGROUND**

Defendant's Calvert City plant manufactures various specialty products and chemicals using industrial equipment. The Maintenance Department, which performs both planning and craft work, is responsible for maintaining, repairing, and constructing the industrial machinery and equipment Defendant uses in its manufacturing processes. Employees in the Planner position identify the appropriate craft and estimate the number of hours necessary to complete particular tasks. As part of this process, Planners must order materials and parts needed for the job, as well as identify any special equipment needs or task-related requirements. Maintenance craft work is divided among speciality craft crews of Pipefitters, Millwrights and Instrumentation/Electrician, and a Shift crew

that handles scheduled overflow work and emergency tasks during the afternoon shift. Until December 2005, there was also a separate General Craft crew with a separate supervisor. Maintenance Supervisors, also called Front Line Leaders ("FLLs"), supervise the various crews.

Consistent with industry standards, Defendant's Maintenance Department seeks a supervisor-to-employee ratio of approximately one FLL to ten to fifteen employees. That ratio helps ensure efficiency and promotes the productivity of the crews. While some crew ratios may be slightly lower or higher than the preferred size, management monitors the performance and productivity of the crews in order to manage this ratio.

Plaintiff began her employment with Defendant as an hourly, union-represented Millwright on February 13, 1989. Plaintiff initially reported to James Provance, the Millwright crew's FLL. In 1997, Plaintiff was promoted to supervise a Shift crew. Plaintiff received a raise when she was promoted to that FLL position. According to Plaintiff, eventually there were just two Shift crews, each with its own FLL, Plaintiff and her brother-in-law, Ed Story. In approximately 2001, according to Plaintiff, Defendant cut back its Shift crews going from two to one. Ed Story remained the FLL of the one remaining Shift crew. Plaintiff was transferred to the General Craft crew FLL position which was also within the Maintenance Department. According to Plaintiff, prior to her transfer, Jonathan Fiser, a subcontractor who was not employed by Defendant, had been serving as the FLL of that General Craft crew. Defendant ultimately hired Fiser on June 30, 2003 as a Planner, Coordinator and a Relief FLL, occasionally relieving the Maintenance FLL as needed.

The General Craft crew performed various maintenance tasks at different job sites within the plant, primarily working on insulation, painting, and structural steel work. The General Craft crew had fewer crew members than the other crews, with approximately nine employees when Plaintiff

became the crew's FLL.

Jim Duncan, the Maintenance Process Manager, became Plaintiff's supervisor when she transferred to the General Craft crew. Plaintiff testified that she initially spoke to Duncan about her transfer, suggesting that she, rather than Ed Story, should have been permitted to stay with her Shift crew because she had more seniority than he did. Plaintiff did not complain that she believed her transfer was based on her age or sex. Plaintiff did not file a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that her transfer to the General Craft FLL position was discriminatory.

In 1998 Duncan made the following comment to Plaintiff, "Well, I really wouldn't have my wife working here. I just don't feel like this is a place that a woman should be." Plaintiff never complained of the comment and Duncan never made a remark like it again. Plaintiff also claims that seven years prior to the time that she was terminated, Duncan unzipped his pants in front of Plaintiff while fooling with his shirt. Plaintiff never filed a complaint concerning this incident. Plaintiff testified that she felt that Duncan's actions were sexually suggestive. Plaintiff testified that she was required to occasionally work sixteen hour shifts during 2003.

Duncan provided Plaintiff with yearly appraisals of her work, which covered the preceding year. In 2003, 2004, and 2005, Plaintiff received an overall rating of "4" on a scale of 1-5, with 1 being the highest ranking, which Plaintiff characterized as "bad." The "4" rating is described as "fair," "sometimes met expectations." Plaintiff testified that she believed that the 2003 appraisal was unjustified, but admitted that the 2004 and 2005 appraisals were justified. In 1998, Plaintiff had received a ranking of "2," described as "very good" and "met and often exceeded expectations, " and in 1999, a ranking of "3," described as "good" and "met expectations." Duncan did not provide

the 1998 or 1999 appraisals. Plaintiff received several awards during her employment and was recommended for an impact award by Duncan.

By the end of 2005, the General Craft crew's supervisor-to-employee ratio was well below the Maintenance Department's goal of being consistent with industry standards. At that time, Plaintiff had a crew of five employees. Plaintiff testified that, due to vacation and illnesses, on some days she would be supervising only two or three employees.

Duncan testified that it was not cost-efficient or productive for Defendant to maintain a separate crew with this low supervisor-to-employee ratio, when the supervisory responsibilities for those employees could be absorbed by an existing FLL. Defendant eliminated Plaintiff's crew as a separate crew with its own supervisor, assigning her remaining crew members to report to Pipefitter FLL, Randle Petway. Petway absorbed the supervisory responsibility over these employees in addition to his other pre-existing duties. Duncan testified that based on the crew size and decreased supervisory responsibilities, Defendant deemed that it was not cost-efficient or productive to have a separate General Craft FLL, so Defendant eliminated that position. Duncan and Greg Turner, Defendant's Employee Relations Leader at that time, advised Plaintiff on December 28, 2005, that her position had been eliminated and that her employment was being terminated. As a supervisor, Plaintiff was not covered by a collective bargaining agreement and had no right to bump other employees or recall rights. Plaintiff was terminated one week after she requested time off to see the birth of her grandchild.

On January 3, 2006, Plaintiff filed a Charge of Discrimination with the EEOC alleging age and sex discrimination by Defendant. EEOC issued a Notice of Right to Sue dated October 31, 2006. On January 31, 2007, Plaintiff filed the instant Complaint pursuant to KRS 344.040, alleging

violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination Act of 1967.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150,

165 (6th Cir. 1993).

## DISCUSSION

In Kentucky and on a federal level, all civil rights claims are analyzed under the standard set by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 230 (Ky. App. 1984). Under the *McDonnell Douglas* standard, the plaintiff must first establish a *prima facie* case of discrimination by showing: (1) that she belongs to the statutory protected class; (2) she performed her job satisfactorily (was otherwise qualified for the position); (3) she was subject to an adverse employment decision; and (4) the adverse decision resulted in a similarly situated person outside of the protected class being treated more favorably.[1] *McDonnell Douglas*, 411 U.S. at 802-805; *Harker*, 679 S.W.2d at 230. In a case arising out of a work force reduction, the fourth requirement is modified so that the plaintiff must also demonstrate some "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (quotation and citation omitted). "In disparate treatment cases, the fourth element may be replaced with the requirement that the plaintiff show that she was treated differently from similarly-situated individuals." *Policastro v. N.W. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002). If the plaintiff can meet this initial hurdle, the burden then shifts to the employer who must then state with clarity their legitimate reason for the adverse decision. *Harker*, 679 S.W.2d at 230. If the employer offers a legitimate reason, then the burden shifts back to the plaintiff who must show that she is the victim

---

[1] Defendant concedes that because Plaintiff is female, over forty, and was terminated, she meets the first and third prongs of her prima facie burden.

6

of intentional discrimination and that the employer's reasons were pretextual. *Id.*; *Ky. Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 700-701 (Ky. App. 1991).

The Sixth Circuit also recognizes an alternative test. If a plaintiff can establish direct evidence of discrimination, then she need not go through the *McDonnell Douglas* burden-shifting analysis. *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548 (6th Cir. 2004). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Id.*

### I.    DIRECT EVIDENCE

Plaintiff has provided evidence that Duncan stated that he "really wouldn't have my wife working here" and did not "feel like this is a place that a woman should be." These comments were made approximately seven years prior to Plaintiff's termination.

In *Phelps v. Yale Security, Inc.*, plaintiff alleged that she was illegally terminated in violated of the Age Discrimination in Employment Act. The Sixth Circuit found that, although age-related comments referring directly to the worker may support an inference of discrimination, "isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial to support a finding of age discrimination." *Phelps*, 986 F.2d at 1025-26 (internal quotation and citation omitted). In *Phelps*, plaintiff presented evidence that her manager told her that she was to old to be the plant manager's secretary and that she would still be the plant manager's secretary if she were younger and that her upcoming fifty-fifth birthday was a cause for concern. *Id.* at 1025. The court found that the comments, made nearly a year before plaintiff's layoff, were made too long before the layoff to have influenced the termination decision. *Id.* at 1026.

As in *Phelps*, this Court finds that Duncan's comment, made approximately seven years prior to Plaintiff's termination, was made too long before Plaintiff's termination to have influenced the

termination decision. Therefore, this Court finds that Plaintiff has not established direct evidence of discrimination.

## II.   BURDEN-SHIFTING ANALYSIS

The parties are in disagreement as to whether Plaintiff was terminated as part of a work force reduction. "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). If an employee is replaced after her discharge, that employee has not been eliminated as part of a work force reduction. *Id.* "However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id.* Only when another employee is hired or reassigned to perform the plaintiff's duties is the plaintiff replaced. *Id.* An employer has no duty to permit an employee to transfer to another position or to displace workers with less seniority when that employee's position is eliminated as part of a work force reduction. *Id.* at 1469-70.

In the instant case, following Plaintiff's termination, her crew members were assigned to report to Pipefitter FLL Petway. Petway absorbed the supervisory responsibility over these employees in addition to his other pre-existing duties. Hence, Plaintiffs was not replaced after her discharge. *See id.* Therefore, Plaintiff's termination is properly characterized as a work force reduction. *Id.* Thus to establish a *prima facie* case of discrimination, Plaintiff must show: (1) that she belongs to the statutory protected class; (2) she performed her job satisfactorily (was otherwise qualified for the position); (3) she was subject to an adverse employment decision; and (4) some direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the

8

plaintiff for discharge for impermissible reasons. *McDonnell Douglas*, 411 U.S. at 802-805; *Harker*, 679 S.W.2d at 230; *Phelps*, 986 F.2d at 1023.

Defendant asserts that Plaintiff has failed to demonstrate a *prima facie* case of discrimination.[2] Defendant also argues that even if Plaintiff could demonstrate a *prima facie* case of discrimination, Plaintiff cannot show that Defendant's reasons for firing her were pretextual. As this Court has determined that Plaintiff has failed to demonstrate that Defendant's reasons for terminating her employment were pretextual, this Court will, without making a determination on whether Plaintiff established a *prima facie* case of discrimination, proceed directly to the pretext portion of the analysis. A plaintiff demonstrates pretext by showing that the employer's proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the alleged conduct." *Dews v. A.G. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

Defendant's proffered reason for terminating Plaintiff was that it was not cost-efficient or productive for Defendant to maintain a separate crew of General Craft when that crew had dwindled to five employees, resulting in a supervisor-to-employee ratio of one FLL to five employees, well below the targeted ratio of one FLL to ten to fifteen employees. Defendant was under no duty to create a job for Plaintiff or to bump another supervisor or one of her former crew employees in favor of Plaintiff. *See Barnes*, 896 F.2d at 1469-70. This Court finds that Defendant proffered a

---

[2] Plaintiff argues that the evidence showing that the reduction in force operated to single her out for differing treatment includes: (1) the fact that Plaintiff was the only female FLL at the Calvert City plant, (2) that Fiser, a male younger than the Plaintiff and who had less experience and seniority than Plaintiff, performed the duties of General Craft FLL following Plaintiff's termination; and (3) that Duncan made derogatory, inflammatory remarks towards Plaintiff based on gender and also engaged in sexually explicit conduct towards Plaintiff.

legitimate non-discriminatory reason for its action. However, Plaintiff asserts that she has shown evidence that Defendant's stated reason for terminating her employment is patently false. Plaintiff asserts that the General Craft crew was not eliminated but instead continued to work after Plaintiff was terminated and that Fiser, a male younger than the Plaintiff and who had less experience and seniority than Plaintiff, performed Plaintiff's duties as FLL of that crew.

Defendant did not argue that it eliminated the General Craft crew; rather it stated that the five remaining General Craft crew members were assigned upon Plaintiff's termination to report to Pipefitter FLL Petway. Petway absorbed the supervisory responsibility over these employees in addition to his other pre-existing duties. In September 2007, Fiser assumed Petway's position as FLL of the Pipefitter crew. As Pipefitter FLL, Fiser is also responsible for supervising the remaining General Craft crew; he did not become FLL of a separate General Craft crew. Fiser supervises only one General Craft worker. This Court finds that the evidence does not support Plaintiff's allegations of untruthfulness. Therefore, this Court finds that Plaintiff has failed to meet her burden of establishing that she was the victim of intentional discrimination and that Defendant's reasons for her termination were pretextual.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.

An appropriate order shall issue.